IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| § | |
| v. § | Criminal No. 1:08-cr-91-HSO-RHW-5 |
| § | |
| § | |
| § | |
| DERRELL MCDOUGAL § | |

**ORDER DENYING DEFENDANT DERRELL MCDOUGAL'S
MOTION [205] FOR COMPASSIONATE RELEASE**

BEFORE THE COURT is Defendant Derrell McDougal's Motion [205] for Compassionate Release. For the reasons that follow, the Court finds that the Motion should be denied.

I. BACKGROUND

Pursuant to a Plea Agreement with the Government, on October 27, 2008, Defendant Derrell McDougal ("Defendant" or "McDougal") pleaded guilty to Count 1 of the Indictment [19] in this case, which charged him with conspiracy to possess with intent to distribute more than 50 kilograms of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1). *See* Indictment [1] at 19; Min. Entry, Oct. 27, 2008. On January 16, 2009, the Court sentenced McDougal to a 240-month term of imprisonment, followed by three years of supervised release. *See* J. [95] at 2-3. McDougal did not file a direct appeal.

On February 17, 2016, the Court sua sponte entered an Order [172] granting a reduction of McDougal's sentence under 18 U.S.C. § 3582(c)(2) in light of a retroactive amendment to the United States Sentencing Guidelines, and the Court reduced McDougal's sentence to 235 months. *See* Order [172] at 1. On November 23, 2020, McDougal filed his first Motion [186] for Compassionate Release, which the Court denied without prejudice for failure to exhaust administrative remedies. Order [197] at 5.

McDougal filed his present Motion [205] for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) on February 23, 2022. *See* Mot. [205]. McDougal relies primarily upon the alleged sentencing disparity between his original sentence in January 2009 and sentences other defendants are purportedly currently receiving for "marijuana-related crimes." *Id.* at 2; *see id.* at 10-19. In support of this argument, McDougal also points to the sentences his co-conspirators received in this case. *See id.* at 6.

McDougal additionally complains about the Court relying upon "uncorroborated, disputed co-conspirator statements" of co-Defendant John Edward Deangelo ("Deangelo") regarding the purported transport of cocaine to increase his sentence, where Deangelo purportedly benefited significantly from his cooperation and implication of McDougal. *Id.* at 2; *see id.* at 4, 6, 13-18. McDougal points to the statements of other co-conspirators who admitted that Deangelo transported marijuana on their behalf but denied transportation of any cocaine, the testimony of the agent at sentencing who said that Deangelo's girlfriend, co-Defendant Marcia P.

Applewhite ("Applewhite"), did not say anything about transporting cocaine for McDougal, the fact that agents seized only marijuana from Deangelo's car, and Deangelo purportedly recanting his statement concerning marijuana but then reverting to his original statement when his own presentence investigation report included an enhancement for obstruction of justice. *See id.* at 4-5.

McDougal also cites his health issues, which he claims place him at a higher risk of serious complications from COVID-19. These include his hypertension, kidney disease, pre-diabetes, and obesity, as well as his need to care for his aging and disabled mother and stepfather who need in-home care but cannot afford it. *See id.* at 2-3, 6-7, 19-23. Finally, McDougal claims that he has demonstrated exceptional rehabilitation during his incarceration and that all factors under 18 U.S.C. § 3353(a) weigh in favor of his immediate release. *See id.* at 3, 7-8, 23-25. He asserts that he has served "almost 70% of his sentence and over 80% of his statutory sentence," with an expected release date in May 2025. *See id.* at 6.

The Government opposes McDougal's Motion, arguing that he has not demonstrated any extraordinary and compelling reasons warranting a sentence reduction and that the considerations set forth at 18 U.S.C. § 3553(a) weigh against release. *See* Resp. [207] at 1, 10-23. The Government presents evidence that McDougal was fully vaccinated against COVID-19 in September 2021, *see* Ex. [209] at 25 (filed restricted access), and argues this precludes his argument that his susceptibility to the disease is extraordinary and compelling, *see* Resp. [207] at 10-20. The Government contends that McDougal's medical records demonstrate that

all of his "medical conditions are quite stable with the current medical management/treatment plan." *Id.* at 10 (citing Ex. [209]).

To the extent McDougal seeks release to care for his mother and stepfather, the Government takes the position that "Defendant has not shown evidence that he is the only person available to provide care for his parents and therefore, this argument does not meet the burden required for compassionate." *Id.* at 21. Finally, the Government maintains that compassionate release is not warranted because the factors set forth at 18 U.S.C. § 3553(a) weigh against his release. *See id.* at 21-23.

In Reply [210], McDougal asserts that the Government's "conclusory statements'" concerning him being the only caregiver for his elderly mother and stepfather and being a danger to society "fail to undermine the merit of [his] Motion." Reply [210] at 1. According to McDougal, "[t]he government does not, and cannot, contest that Mr. McDougal **has already served more time than he would be sentenced to today** for his non-violent marijuana offense." *Id.* at 1-2 (emphasis in original). McDougal cites the Government's failure to address the changed legal landscape and maintains that "[t]he Court need not look to other grounds to grant release." *Id.* at 2; *see id.* at 2-3. Other factors McDougal claims contribute to the extraordinary and compelling reasons for his release are the heightened risk of severe complications from him potentially contracting COVID-19; him being the only available caretaker for his parents; and the § 3553(a) factors purportedly weighing in favor of release. *See id.* at 3-9.

II. DISCUSSION

A. Whether "extraordinary and compelling reasons" warrant a sentence reduction for McDougal

A sentencing court may reduce a term of imprisonment on motion by a defendant for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) if it finds that "extraordinary and compelling reasons warrant such a reduction . . . ." 18 U.S.C. § 3582(c)(1)(A)(i). The Fifth Circuit has held that when considering a motion for compassionate release, a district court "is bound only by § 3582(c)(1)(A)(i) and, as always, the sentencing factors in § 3553(a)." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

1. McDougal's health

McDougal's medical records reflect that he suffers from various medical conditions. *See* Ex. [209] (filed restricted access). However, this Court has held that "[p]reexisting medical conditions that place a defendant at increased risk for serious illness from COVID-19 are not in and of themselves sufficient to establish extraordinary and compelling reasons justifying a reduction in sentence." *United States v. McLin*, No. 1:17-CR-110-LG-RHW, 2020 WL 3803919, at *3 (S.D. Miss. July 7, 2020), *aff'd*, 840 F. App'x 804 (5th Cir. 2021) (collecting cases); *see also United States v. Raiford*, No. 2:03-CR-25-KS-MTP, 2020 WL 5535368, at *2 (S.D. Miss. Sept. 15, 2020), *appeal dismissed*, No. 20-60883, 2021 WL 1111314 (5th Cir. Feb. 17, 2021). Although certain medical conditions may constitute extraordinary and compelling reasons warranting a reduction, the medical evidence supports the conclusion that McDougal is capable of self-care while incarcerated and that he has

5

access to services to address his medical conditions.  *See* Ex. [209] (filed restricted access).

Moreover, as the Government points out, McDougal has now been fully vaccinated, which reduces his susceptibility to the disease and further weakens his argument that his medical conditions constitute extraordinary and compelling reasons warranting compassionate release.  *See* Resp. [207] at 18; *see also, e.g., United States v. Pryor,* No. 1:14cr62-LG-JCG, 2021 WL 5570595, at *1 (S.D. Miss. Nov. 29, 2021) (holding that a prisoner's concerns of severe illness from COVID-19 were unconvincing and did not justify release, as "[c]ourts in this Circuit have found that COVID-19 vaccines 'keep you from getting and spreading the virus that causes COVID-19,' and 'also help keep you from getting seriously ill even if you do get COVID-19'" (quoting *United States v. White*, No. 11-287, 2021 WL 3021933, at *4 (E.D. La. July 16, 2021)); *United States v. Forman*, No. 4:15-CR-129(6), 2021 WL 1536491, at *7 (E.D. Tex. Apr. 16, 2021) (recognizing that "[i]n the Fifth Circuit and elsewhere, courts have denied early release to inmates with a variety of medical conditions who have been vaccinated for COVID-19") (collecting cases).

2.      Need to care for family members

To the extent McDougal claims that he needs to care for his "elderly and disabled" mother and stepfather, Mot. [205] at 7, McDougal relies upon the Declarations [205-2], [205-3] of his mother, Dorothy Stephens ("Mrs. Stephens"), and his stepfather, Benny Stephens ("Mr. Stephens"), *see id.*; Reply [210] at 6-7. Mrs. Stephens, who is 66 years old, discloses that her medical issues "make living

alone with [her] husband difficult." Decl. [205-2] at 2.  Specifically, Mrs. Stephens had a "serious heart attack in 2003" and open-heart surgery in 2013, and she states that she cannot drive and suffers from arthritis.  *See id.* at 1.  Mr. Stephens is 58 years old and had a "significant stroke in 2009" and a heart attack in 2015.  Decl. [205-3] at 1.  According to Mrs. Stephens, her husband "completes [their] errands that require driving, including driving [her] to [her] doctor appointments," but due to tremors Mr. Stephens has suffered since his stroke in 2009, Mrs. Stephens believes it would be safer for McDougal to drive for them.  Decl. [205-2] at 2.

Mrs. Stephens identifies other assistance McDougal could provide, including assisting with lifting Mr. Stephens when he falls and completing repairs to their home that they are unable to complete.  *See* Decl. [205-2] at 2.  According to Mrs. Stephens, she and her husband have an extra bedroom in their home for McDougal to live in when he is released, and there are numerous employment opportunities for him in that area.  *See id.*; *see also* Decl. [205-3] at 1 (Mr. Stephens similarly stating "[g]iven my and my wife's health issues, it would be very helpful to have [McDougal] live with us.").  Mrs. Stephens represents that their "other sons and [her] sisters do not live with [them] and cannot provide the live-in care that [McDougal] would provide," and that she and her husband "cannot afford paid home care."  Decl. [205-2] at 2.

The Court is not persuaded that the need for McDougal to care for his 66-year-old mother and her 58-year-old husband constitutes an extraordinary and compelling reason warranting compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A).

While the Court is sympathetic to their health concerns, and while it may be more expedient for them to have McDougal living in their home, Mrs. Stephens has identified other individuals, including their other sons and her sisters, who are potential alternative caregivers for her and Mr. Stephens. *See* Decl. [205-2] at 2. In sum, McDougal has not adequately demonstrated that the need for him to care for Mr. and Mrs. Stephens constitutes an extraordinary and compelling reason justifying release.

3.  Change concerning prosecutions for marijuana-related crimes

As for McDougal's argument concerning the change in landscape with respect to the prosecution of, and sentences for, marijuana-related crimes, the Court is not persuaded that this ground constitutes an extraordinary and compelling reason justifying compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A). Possession with intent to distribute marijuana remains a federal crime, *see* 21 U.S.C. §§ 802(6), 812(c)(10) (Schedule I), & 841(a)(1), and "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion," *United States v. Batchelder*, 442 U.S. 114, 124 (1979).

To the extent McDougal alludes to the conclusion that sentences for marijuana-related federal offenses have steadily reduced over time, that is not completely accurate. McDougal relies in part upon the United States Sentencing Commission's ("USSC") "Quick Facts" report for fiscal year 2020. *See, e.g.,* Mot. [205] at 12 n.9. For that year, the average sentence for marijuana trafficking offenders was 29 months. *See* USSC Quick Facts FY 2020 at 1, available at

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Marijuana_FY20.pdf (last accessed March 28, 2022) ("FY 2020 Report"). However, this represents an approximately 11% increase from the average sentence of 26 months from four years earlier, in 2016. *See id.* at 2. Of those sentenced under the Guidelines Manual, 67.9% were sentenced within the applicable Guidelines range, and according to the FY 2020 Report, "[t]he average guideline minimum and the average sentence imposed slightly increased over the past five years." *Id.* Thus, at least for the time frame from 2016 to 2020, while fewer marijuana traffickers may have been convicted, their sentences actually increased on average. *See id.* Moreover, during fiscal year 2020, 4.2% of offenders received a sentence of more than 10 years. *See id.* at 1.

The earliest available archived Quick Facts report on marijuana trafficking offenses online is for fiscal year 2012. *See* USSC Quick Facts FY 2012, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Marijuana_Trafficking.pdf (last accessed March 28, 2022) ("FY 2012 Report"). At that time, "[t]he average sentence length for marijuana traffickers was 34 months," with 4.7% of offenders being sentenced to 10 or more years. *Id.* at 1. According to the 2012 report, "[f]or each of the last five years, more than half of all marijuana traffickers were sentenced within the guideline range," and "[b]oth the average sentence and the average guideline minimum for marijuana traffickers [was] stable for the [prior] five years." *Id.* at 2. That five-year period

9

would have included the timeframe when McDougal was sentenced in January 2009.  *See id.*

The lesser sentences identified in FY 2012 and 2020 Reports are simply averages with respect to marijuana traffickers' sentences under the Guidelines.  *See id.* at 1-2; FY 2012 Report at 1-2.  Additionally, at the sentencing hearing, the Court agreed with the PSR and found that cocaine trafficking was a part of McDougal's conspiracy, which increased his base offense level and Guidelines imprisonment range when the 10 kilograms of cocaine attributable to him was included in the drug quantity calculation.  *See* Tr. [204] at 76 (filed restricted access); PSR [93] at 8-9.  McDougal also had an extensive criminal history, which placed him in a criminal history category of V.  *See* PSR [93] at 11 (filed under seal).  Both of these factors increased McDougal's sentencing exposure well above that of the average marijuana trafficker represented in the FY 2012 and 2020 Reports.

Based on the foregoing, the Court does not find that McDougal's prosecution and sentence for marijuana trafficking in 2009 constitute an extraordinary and compelling reason for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

4.    Reliance upon co-Defendant's statements concerning cocaine

To the extent McDougal faults the Court for attributing cocaine to him at sentencing, this is an improper attempt to collaterally attack his sentence.  Even if the Court considered this argument, it does not constitute an extraordinary and compelling reason warranting compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A).

10

At his sentencing hearing, McDougal's counsel objected to the extent the PSR stated 10 kilograms of cocaine was attributable to him. *See* Tr. [204] at 5 (filed restricted access). Applying the correct preponderance-of-the evidence standard, *see United States v. Lujan*, 25 F.4th 324, 327 (5th Cir. 2022), the Court considered the PSR and testimony at the sentencing hearing, and overruled the objection, *see* Tr. [204] at 75-76 (filed restricted access); *see also, e.g., United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) ("Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." (quotation omitted)).

To the extent that McDougal complains that the Court relied upon hearsay at sentencing to make its determination concerning whether the cocaine could be attributed to him, this argument is likewise unavailing. The Federal Rules of Evidence do not apply at sentencing hearings, *see* Fed. R. Evid. 1101(d)(3); U.S.S.G. § 6A1.3(a), and hearsay testimony is permitted, *see United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006). McDougal's attempt to collaterally attack the Court's ruling concerning the inclusion of the cocaine in his drug quantity calculation for sentencing is not well taken and does not support a compassionate release.

In sum, McDougal has not demonstrated that there is any "extraordinary and compelling reason" justifying compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). McDougal's Motion should be denied for this reason.

C.     Whether the § 3553(a) factors weigh in favor of early release

Even if McDougal had presented evidence of an extraordinary and compelling reason under § 3582(c)(1)(A), the § 3553(a) factors weigh strongly against his release based upon the record.  These factors include, among other things, the nature and circumstances of the offense of conviction and the history of Defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public.  *See* 18 U.S.C. § 3553(a).

According to the PSR, based upon a total offense level of 36 and a criminal history category of V, McDougal's Guidelines imprisonment range was 292 to 365 months.  *See* PSR [93] at 14 (filed under seal).  However, due to a 20-year statutory cap for the count of conviction, McDougal's Guidelines range was capped at 240 months.  *See id.*  The Court sentenced McDougal to a 240-month term of imprisonment, followed by three years of supervised release.  *See* J. [95] at 2-3.  After McDougal was sentenced, the Guidelines were amended to retroactively reduce the applicable Sentencing Guidelines range for most federal drug trafficking offenses.  *See* U.S.S.G., App. C, amend. 782 (effective Nov. 1, 2014); U.S.S.G. § 2D1.1(c); *see also* U.S.S.G., App. C, amend. 788 (effective Nov. 1, 2014) (providing that a court shall not order a reduced term of imprisonment under amendment 782 unless the effective date of the court's order is November 1, 2015, or later).  In light of the amendment, McDougal's sentence was reduced to 235 months.  *See* Order [172] at 1.

In sentencing McDougal originally, and in subsequently reducing his sentence, the Court considered all of the relevant factors under § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3353(a)(6). The sentences in this case for McDougal and his co-Defendants avoided those unwarranted disparities, and also "avoid[ed] unwarranted *similarities* among other co-conspirators who were not similarly situated." *United States v. Gozes-Wagner*, 977 F.3d 323, 342 (5th Cir. 2020) (emphasis in original) (quoting *Gall v. United States*, 552 U.S. 38, 55 (2007)).

With respect to McDougal's claims of sentencing disparities among his fellow Defendants, he is simply mistaken. His four co-Defendants were Deangelo, Applewhite, Octavius Terrell Triplett ("Triplett"), and Seabron Mackundra Millender ("Millender"). Deangelo pled guilty to the same conspiracy charge in Count 1 on August 14, 2008. *See* Min. Entry, Aug. 14, 2008. However, Deangelo had zero criminal history points, placing him in a criminal history category of I. *See* PSR [83] at 9 (filed under seal). Deangelo also received a two-point reduction to the base offense level under the Guidelines pursuant to U.S.S.G. § 2D1.1(b)(11) for specific offense characteristic, *see id.* at 8, while McDougal received a two-level increase as an adjustment for his role in the offense, *see* PSR [93] at 9 (filed under seal). Deangelo's Guidelines imprisonment range was only 70 to 87 months. *See* PSR [83] at 13 (filed under seal). After the Court granted the Government's Motion for Downward Departure, Deangelo was sentenced to 54 months incarceration. *See*

Nov. 14, 2008, Min. Entry; J. [85] at 2.[1] Deangelo's criminal history, role in the offense, and cooperation had an enormous impact on his sentence being substantially less than McDougal's, meaning there was no sentencing disparity. Indeed, to have given Deangelo and McDougal the same sentence would have constituted an unwarranted similarity among two co-conspirators who were not similarly situated, which is to be avoided. *See Gozes-Wagner*, 977 F.3d at 342.

Co-Defendant Applewhite also pled guilty to Count 1 of the Indictment. *See* Min. Entry, Aug. 15, 2008. Applewhite had zero criminal history points, resulting in a criminal history category of I, and she received two-point reductions both for a specific offense characteristic and for her limited role in the offense. *See* PSR [84] at 8-9 (filed under seal). Therefore, her Guidelines imprisonment range was 46 to 57 months. *See id.* at 13. After the Court granted the Government's Motion for Downward Departure, Applewhite was sentenced to 33 months incarceration. *See* Min. Entry, Nov. 14, 2008; J. [86] at 2.[2] Applewhite's actions and characteristics with respect to the conspiracy, as well as her criminal history, were remarkably different from McDougal, such that there was no disparity between their sentences. *See Gozes-Wagner*, 977 F.3d at 342.

Triplett also pled guilty to the conspiracy charge contained in Count 1 of the Indictment. *See* Min. Entry, Oct. 17, 2008. Like Deangelo and Applewhite, Triplett's PSR reflects that he had a criminal history score of zero under the

---

[1] Bureau of Prisons' records, which are publicly available online, indicate that Deangelo was released on November 21, 2011, prior to the effective date of amendment 782.
[2] Like Deangelo, Applewhite was released prior to amendment 782.

Guidelines, placing him in a criminal history category of I, and his base offense level was decreased by two levels under U.S.S.G. § 2D1.1(b)(11) due to a specific offense characteristic. *See* PSR [92] at 9-10 (filed under seal). Therefore, his imprisonment range under the Guidelines was 70 to 87 months, *see id.* at 14, and he was sentenced to 70 months incarceration, *see* Min. Entry, Jan. 16, 2009; J. [94] at 2.[3] Like Deangelo's and Applewhite's sentences, there is no disparity between Triplett's and McDougal's sentences given the differences in their criminal histories and offense characteristics. *See Gozes-Wagner*, 977 F.3d at 342.

As with the other Defendants, Millender pled guilty to Count 1 of the Indictment. *See* Min. Entry, Oct. 27, 2008. Millender had two criminal history points, establishing a criminal history category of II, which was much lower than McDougal's. *See* PSR [99] at 13 (filed under seal). Millender received a two-level increase for a specific offense characteristic under U.S.S.G. § 2D1.1(b)(1) and a four-level increase for his role in the offense pursuant to § 3B1.1(a), which resulted in a total offense level higher than that of McDougal. *Compare id.* at 12 (38 total offense level for Millender), *with* PSR [83] at 9 (filed under seal) (36 total offense level for McDougal). Ultimately, Millender's Guidelines imprisonment range was 292 to 365 months, was higher than McDougal's, but like McDougal's, his exposure was statutorily capped at 240 months. *See* PSR [99] at 14 (filed under seal). Millender was originally sentenced to 240 months incarceration, the same as McDougal, *see*

---

[3] As with Deangelo and Applewhite, Triplett did not receive the benefit of amendment 782 during his incarceration because of the shorter length of his sentence and the effective date of the amendment.

15

Min. Entry, Jan. 16, 2009; J. [95] at 2, and like McDougal, his sentence was reduced to 235 months after the amendment to the Guidelines, *see* Order [172] at 1.  Given the fact that Millender had a lesser criminal history than McDougal, but a higher total offense level, the Court cannot say that this constituted a sentencing disparity within the meaning of § 3553(a).  *See Gozes-Wagner*, 977 F.3d at 342.  Therefore, McDougal has not demonstrated any unwarranted sentencing disparities among him and any of his co-Defendants.  *See id.*

According to McDougal, he has served "almost 70% of his sentence and over 80% of his statutory sentence."  Mot. [205] at 6.  However, the Court considers significant the nature and circumstances of McDougal's offense of conviction, his lengthy criminal history, and the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public.  *See* 18 U.S.C. § 3553(a).  Considering the totality of the record before it, the Court finds that releasing McDougal from incarceration at this time would not reflect the gravity of his offense, protect the public, or afford adequate deterrence.  *Sed id.*  McDougal's Motion [205] is not well taken and should be denied.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Derrell McDougal's Motion [205] for Compassionate Release is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 5th day of April, 2022.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE